acm

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STEVEN G. TRAPP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )     **Case No. 05-4104-JAR** |
| | ) |
| **UNITED STATES DISTRICT COURT** | ) |
| **JUDGE PHILIP M. PRO,** | ) |
| **ASSISTANT UNITED STATES** | ) |
| **ATTORNEY J. GREGORY DAM,** | ) |
| **DAVE DILBERTI,** | ) |
| **TROY SCHUSTER,** | ) |
| **CRAIG BEAM** | ) |
| **DARREN S. WEBBER,** | ) |
| **UNITED STATES MARSHALS** | ) |
| **SERVICE,** | ) |
| **JOHN DOES (I-X) INCLUSIVE, and** | ) |
| **ROE Corporations (I-X) INCLUSIVE ,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

## MEMORANDUM ORDER AND OPINION GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff, who is pro se, brings this action seeking in excess of $1.5 million in actual damages, an unspecified amount of compensatory damages, and a sum in excess of $1.5 million in punitive damages for severe emotional distress and alleged property damage, loss of equity in his residence, and loss of livestock.  Plaintiff asserts that defendants conspired and violated his Fourth and Fifth Amendment rights and his civil rights under Title VII of the Civil Rights Act of 1967 during the course of arresting him on August 13, 2002.  This matter is before the Court on defendants' Motion to Dismiss.  (Doc. 29.)  For the reasons stated below, the Court **grants**

1

defendants' motion and dismisses the action.

**I.      Subject Matter Jurisdiction**

There are two statutory bases for federal subject matter jurisdiction.  First, under 28 U.S.C. § 1332, federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exist.  Second, under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," or federal question jurisdiction.  In addition, if the Court has federal question or diversity jurisdiction of some claims, it may exercise supplemental jurisdiction over state law claims.[1]

The Tenth Circuit has commented on the limited jurisdiction of the federal courts and summarized the duties of the district court in considering whether it has jurisdiction to consider a case:

> The Federal Rules of Civil Procedures [sic] direct that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." . . . Moreover, "[a] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." . . .  Nor may lack of jurisdiction be waived or jurisdiction be conferred by "consent, inaction or stipulation." Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.[2]

Plaintiff is responsible for showing the court by a preponderance of the evidence that jurisdiction

---

[1] 28 U.S.C. § 1367.

[2] *Penteco Corp. v. Union Gas System*, 929 F.2d 1519, 1521 (10th Cir. 1991) (internal citations and quotations omitted).

is proper.[3]  Mere allegations of jurisdiction are not enough.[4]

## II.    Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[5]  Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[6]  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."[7]

On a Rule 12(b)(6) motion, a court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff.[8]  The Court construes the allegations in the light most favorable to the plaintiff.[9]  These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."[10]  "[I]f the facts narrated by the plaintiff 'do not at least outline or adumbrate' a viable

---

[3]*United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002).

[4]*Id.* at 798.

[5]Fed. R. Civ. P. 12(b)(6).

[6]*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citation omitted).

[7]*Mounkes v. Conklin*, 922 F. Supp. 1502, 1506 (D. Kan. 1996) (quotation omitted).

[8]*Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987).

[9]*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

[10]*Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (footnote omitted).

claim, his complaint cannot pass Rule 12(b)(6) muster."[11]  Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interest of justice.[12]

Additionally, because petitioner is a pro se plaintiff, the Court must construe pro se pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[13]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[14]  The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[15]

### III.   Background

Plaintiff was convicted and sentenced for conspiracy to commit securities fraud in the District of Nevada.  He was instructed to self-surrender to the Bureau of Prisons ("BOP") facility in Leavenworth, Kansas on August 8, 2002.  Plaintiff failed to self-surrender.  On the following day, August 9, 2002, the BOP advised the United States Marshals Service ("USMS") in the District of Nevada, of plaintiff's failure to surrender.

On August 13, 2002, Defendant Diliberti, a deputy marshal for the USMS in Nevada, telephoned plaintiff's father and requested that he have plaintiff contact Diliberti.  Almost immediately, plaintiff telephoned Diliberti, explaining that he was hiring a new lawyer and

---

[11]*Mounkes*, 922 F. Supp. at 1506 (citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988) (quotation omitted)).

[12]*Id.*

[13]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[14]*Id.*

[15]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

would be filing for a new court date.  Diliberti informed plaintiff that he was subject to arrest, for his name had been entered in the National Crime Information Center as a wanted felon.  Diliberti advised plaintiff to call the sentencing judge in the District of Nevada in order to resolve any issue about self-surrender.  Plaintiff confirmed for Diliberti plaintiff's telephone number and address in Topeka, Kansas.

Diliberti then called Defendant Judge Pro, the sentencing judge in Nevada, learning that plaintiff had called the judge's office.  But, Judge Pro advised Diliberti that he was not going to grant plaintiff *another* extension of time to self-surrender.  Judge Pro verbally instructed Diliberti to arrest plaintiff, and Judge Pro informed Diliberti that an arrest warrant would be issued that day.  Diliberti then spoke with Defendant Gregg Damm, an Assistant United States Attorney in Nevada, who assured Diliberti that he would immediately file for a federal arrest warrant; this prosecutor also advised Diliberti that he could arrest plaintiff on the basis of the Judgment and Commitment Order previously filed with the court.

Diliberti then telephoned Defendant Beam, a USMS deputy marshal in Kansas, who leads a task force that searches for fugitives.  Diliberti advised Beam that he had spoken with plaintiff, that plaintiff was located in Kansas, that plaintiff had failed to surrender to serve his sentence, that the sentencing judge had ordered that he be arrested and that the judge would be signing an arrest warrant that very day, August 13, 2002.  In fact, after this phone call, Diliberti was the affiant on the Complaint filed in the United States District Court in Nevada, alleging that plaintiff was in violation of 18 U.S.C. §3146(a)(2), Failure to Surrender for Service of Sentence.

Based on what Diliberti had told him, Beam relayed the information to Defendant Schuster; and Schuster went to plaintiff's residence in Topeka.  As he stood outside plaintiff's

residence, Schuster made a cellular phone call to plaintiff's residential phone.  No one answered.
Several times Schuster knocked on the door of the residence.  No one responded.  Schuster
commenced surveilling the residence.

Some time later that day, plaintiff telephoned Beam, advising that plaintiff's wife had
told him that the USMS had been at his home earlier that day.  This, of course, indicated that
plaintiff's wife had been home when Schuster had knocked and called the residence earlier that
day.  Beam told plaintiff that the USMS was there to take plaintiff into custody because he had
failed to surrender to the BOP as appointed.  Plaintiff responded that he was going to arrange his
surrender through his attorney.  Beam reiterated that plaintiff should immediately turn himself
in, before new charges were filed against him.  After telling Beam that he was at a gym, plaintiff
advised that he would turn himself in to the BOP.

But plaintiff was not at a gym, for shortly thereafter, Schuster, who was still surveilling
the residence, made another cellular phone call to plaintiff's residential phone.  Plaintiff
answered.  Schuster identified himself, told plaintiff that he was outside, and instructed plaintiff
to come to the door.  Plaintiff did not comply, again stating that he would surrender later through
his attorney; plaintiff then hung up the phone.  Schuster again knocked loudly on plaintiff's door,
instructing him to come to the door.  Schuster placed at least two more cellular phone calls to
plaintiff's residence.  No one answered the phone.  After knocking again and receiving no
response, Schuster advised Beam of the circumstances, then waited outside plaintiff's front door
for other officers to arrive.

Defendants Beam and Weber responded to the location.  Having obtained approval from
a USMS supervisor to make a forcible entry, Weber broke the back window of the residence and

entered through the window, followed by Schuster.  As they entered the home, plaintiff's wife vocally objected to their entry and questioned why they had damaged her window.  Weber identified himself to her and repeatedly instructed her to open the door.  Plaintiff's wife refused to open the door.  Weber and Schuster handcuffed plaintiff's wife and had her sit on the couch. Schuster then opened the front door of the residence, allowing other officers to enter the residence.  Plaintiff's wife repeatedly gave false information about plaintiff's location, first denying that he was home, then stating that he was in the bedroom.  After hearing a crashing sound in the garage area, Schuster found plaintiff crouching beside a car in the attached garage. Schuster placed plaintiff under arrest and transported him to the Shawnee County jail pending his transfer to a BOP facility.

On August 14, 2003, plaintiff filed a very similar action in this Court in *Trapp v. United States Marshals Service, et al.*, No 03-3335-JAR ("Trapp I").  As defendants point out, this case is identical to Trapp I with the exception of two additional defendants, Judge Pro and Assistant United States Attorney Damm, and additional claims for relief regarding plaintiff's alleged loss of livestock and equity in his residence.  This Court dismissed Trapp I finding that the Court lacked subject matter jurisdiction over plaintiff's claims against defendants in both their official and individual capacities.[16]  On February 21, 2006, plaintiff filed a Notice of Appeal (Doc. 50), and Trapp I is currently on appeal to the Tenth Circuit.

On August 29, 2005, plaintiff filed the Complaint in this action against Judge Pro,

---

[16]*Trapp v. United States Marshals Serv., et al.*, No. 03-3335-JAR, 2005 WL 3179471 (D. Kan. Nov. 22, 2005) (granting summary judgment in favor of defendants because defendants enjoyed qualified immunity for acts performed in their individual capacities); *Trapp v. United States Marshals Serv., et al.*, No. 03-3335-JAR, 2004 WL 1851756 (D. Kan. Aug. 10, 2004), *aff'd in part and rev'd in part*, 139 Fed. Appx. 12 (10th Cir. 2005) (dismissing claims against defendants in their official capacities).

Assistant United States Attorney Damm, the United States Marshals Service, Dilberti, Schuster, Beam, and Weber along with ten unnamed defendants and ten unnamed corporations, alleging that defendants conspired and violated his Fourth and Fifth Amendment rights during the course of his arrest.  Defendants filed a motion to dismiss on December 22, 2005.  (Doc. 28.)  After this Court granted plaintiff two extensions of time, plaintiff's response was due April 17, 2006. (Doc. 35.)  Plaintiff filed his response out of time on April 21, 2006.  (Docs. 36, 37.)  Five days later, plaintiff filed an amended response (Docs. 38, 39) in which he made two minor alterations to his original response.[17]  In their reply, defendants request the Court disregard plaintiff's response as untimely.

The Court has considered whether to disregard plaintiff's response because it was not timely filed.  The local rules allow a party twenty-three days to respond to a motion to dismiss.[18] In the event a party fails to respond within the requisite time period, the local rules provide that the party has waived his right to file a response except upon a showing of excusable neglect.[19] Absent a showing of excusable neglect, the motion "will be considered and decided as an

---

[17]The first alteration appears on page 2 of the amended response.  In his first response, plaintiff states: "Defendants now seek immunity, or in the alternative, summary judgment, requesting the court to condone their wrongful acts."  (Doc. 37 at 2.)  In the amended response plaintiff states: "Defendants now seek immunity, or in the alternative, dismissal based on Res Judicata and/or Stature [sic] of limitations, requesting the court to condone their wrongful acts."  (Doc. 39 at 2.)  The second alteration is on page 7 of the amended response.  Plaintiff deleted the following language that appeared in his original response:

> Defendant misstates Payton v. New York, 445 U.S. 573, 586 (1980), alleging "no search warrant is necessary as long as the officer has reason to believe the fugitive is present in his own residence." This makes no logical or legal sense, but would have the effect of allowing officers, under the color of law, to enter anyone's home under the allegation that the party was believed to be in his own home!  In fact, the holding

(Doc. 37 at 7.)

[18]D. Kan. R. 6.1(d)(2).

[19]D. Kan. R. 7.4.

uncontested motion, and ordinarily will be granted without further notice."[20]  While the Court may consider granting the motion to dismiss based on plaintiff's failure to respond in a timely fashion, here the Court will consider plaintiff's response in addressing the merits of defendants' motion to dismiss.

In considering plaintiff's response, however, the Court refuses to construe plaintiff's action as alleging a claim under the Federal Tort Claims Act ("FTCA").[21]  For the first time in his response, plaintiff alleges that his Complaint was filed pursuant to the FTCA.  (Doc. 37 at 1.)  But in his Complaint, plaintiff does not specify the tort or the basis of his tort claim.[22]  Instead, plaintiff only alleges constitutional violations which are not actionable under the FTCA.[23]  Further, plaintiff has named a federal agency and federal agents as defendants in this action, rather than the United States itself, which is the only proper defendant under the FTCA.[24]  The Court must construe pro se pleadings liberally, however, in this case, even the most liberal construction of plaintiff's Complaint does not reveal that he has alleged a claim under the FTCA.  Moreover, even if plaintiff had stated a claim under the FTCA, his claim would be barred by the statute of limitations.[25]

---

[20]*Id.*

[21]28 U.S.C. §§ 2671–2680.

[22]*Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998).

[23]*Id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994)); *see also Rogers v. Fed. Bureau of Prisons*, 105 Fed. Appx. 980, 984 (10th Cir. 2004).

[24]*Rogers*, 105 Fed. Appx. at 984.

[25]"A two-year statute of limitations applies to FTCA claims."  *Hoery v. United States*, 324 F.3d 1220, 1221 (10th Cir. 2003) (citing 28 U.S.C. § 2401(b)).  In this case, the statute of limitations began running on August 13, 2002, when defendants arrested plaintiff in his home.  "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."  28 U.S.C. § 2401(b).  Plaintiff contends that he filed an administrative tort claim with the Department of Justice on

Instead, the Court will construe plaintiff's Complaint as alleging a *Bivens* action against all defendants.  The Supreme Court recognized in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*[26] that a plaintiff may bring a cause of action seeking money damages for any injuries suffered as a result of constitutional violations committed by federal agents.[27]  Because plaintiff has alleged that these defendants, as federal officials, violated his constitutional rights and plaintiff seeks monetary damages for the injuries he allegedly suffered, his Complaint must be construed as a *Bivens* action.[28]

## IV.    Analysis

Defendants have filed a motion to dismiss arguing that (1) plaintiff's claims are barred by the statute of limitations, (2) Defendants Judge Pro and Assistant United States Attorney Damm, are immune from suit, and that (3) plaintiff's claims against the remaining defendants are barred by res judicata.  Because defendants are correct that plaintiff's claims are barred by the statute of limitations, the Court must dismiss this action against all defendants.[29]  Further, the Court finds

---

November 8, 2004.  (Doc. 37 at 10.)  He also attaches a letter from the Department of Justice in response to his claim "dated November 8, 2004."  (Doc. 37, Attach. A at 2.)  Because the statute of limitations expired by the time plaintiff filed his administrative complaint, even if plaintiff had alleged an FTCA claim, the Court would lack jurisdiction over such a claim and plaintiff's claim would be barred.  Further, the Court would also not have jurisdiction over an FTCA claim because an action under the FTCA may not be instituted until the federal agency denies the claim and makes a final disposition.  28 U.S.C. § 2675; *see also Kendall v. Watkins*, 998 F.2d 848, 853 (10th Cir. 1993).  Plaintiff has not alleged that his claim has been denied or that the federal agency has made a final disposition.

[26]403 U.S. 388 (1999).

[27]*Id.* at 397.

[28]Plaintiff's Complaint also alleges that defendants violated Title VII of the Civil Rights Act of 1967.  42 U.S.C. § 2000e–2000e17.  Title VII protects equal employment opportunities, and plaintiff's citation to this statute has no application in this case.  Plaintiff is not bringing an employment action against the defendants, and therefore the Court will disregard the reference to Title VII.

[29]The Court finds dismissal appropriate in favor of all defendants, including the John Doe and Roe Corporation defendants, because plaintiff does not characterize the actions of the unnamed defendants as inconsistent with any of the actions of the named defendants.  *See Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir.

that Defendants Judge Pro and Assistant United States Attorney Damm enjoy judicial and prosecutorial immunity from suit.  And finally, the Court finds that plaintiff's action against the remaining defendants is barred by the doctrine of res judicata.

### A.   Statute of Limitations

Plaintiff's claims, brought as a *Bivens* action, are barred by the statute of limitations.[30] "[A] *Bivens* action . . . is subject to the statute of limitations of the general personal injury statute in the state where the action arose."[31]  Because plaintiff's cause of action arose in Kansas, the Court applies the two year statute of limitations codified in K.S.A. § 60-513(a)(4).[32]  This two year limitations period "begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."[33]

Here, plaintiff's claims arose on August 13, 2002, when defendants arrested plaintiff at his home in Topeka, Kansas.  Plaintiff filed his Complaint in this action on August 29, 2005, more than a year after the applicable statute of limitations period had run.  Therefore, plaintiff's claims are barred by the statute of limitations.  Accordingly, defendants' motion to dismiss must be granted.

---

1996) (finding it appropriate to include John Doe defendants along with the named defendants in dismissal of the action when the identities of such defendants was adequately described and based on the acts of such defendants, they would have been entitled to dismissal as well).

[30]The Court notes that even if it construed plaintiff's Complaint as alleging a claim under the FTCA, such a claim would also be barred by the statute of limitations.  *See supra* n.25.

[31]*Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 936, 968 (10th Cir. 1994) (citations omitted).

[32]To the extent plaintiff's claims against Judge Pro and Assistant United States Attorney Damm arose in Nevada, the result would be the same.  The statute of limitations for personal injury actions in Nevada is also two years.  Nev. Rev. Stat. 11.190(4)(e).

[33]*Indus. Constructors*, 15 F.3d at 969.

### B.    Judicial Immunity

Even if the statute of limitations had not expired, plaintiff's claims would fail because Judge Pro is immune from suit.  A judge is generally immune from a suit for money damages.[34] "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages."[35]  "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."[36]  Instead, immunity is overcome in only two sets of circumstances: (1) a judge is not immune for actions taken outside of the judge's judicial capacity, and (2) a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction.[37]

In this case, neither of the two circumstances occurred to strip Judge Pro of his judicial immunity.  First, Judge Pro's orders to arrest defendant clearly occurred in his judicial capacity. "'[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'"[38]  Here, Judge Pro's authority to

---

[34]*Mireles v. Waco*, 502 U.S. 9, 9 (1991).

[35]*Id.* at 11 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[36]*Id.* (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"); *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819 (1982) (allegations of malice are insufficient to overcome qualified immunity)).

[37]*Id.* (citing *Forrester v. White*, 484 U.S. 219, 227–229, 356–357 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360 (1978); *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)).

[38]*Id.* (quoting *Stump*, 435 U.S. at 362).

12

issue an arrest warrant comes from the Federal Rules of Criminal Procedure.[39]  "[A]n arrest warrant must be supported by probable cause to comply with the Fourth Amendment."[40] "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime."[41]

In this case, Judge Pro was acting in his judicial capacity when he ordered plaintiff's arrest.  Based on Diliberti's assertions, the contemporaneous filing by Assistant United States Attorney Damm, and most notably, his phone conversations with plaintiff after he was supposed to self surrender, Judge Pro found that probable cause existed to support an arrest warrant for plaintiff when he had committed the crime of failing to surrender to the BOP.  While Judge Keen, rather than Judge Pro, signed the arrest warrant that was issued later that day, this does not change the fact that Judge Pro was acting in his judicial capacity when he ordered plaintiff's arrest and advised that an arrest warrant would be forthcoming that day.

Further, Judge Pro had jurisdiction to order plaintiff's arrest.  "[A]n action–taken in the very aid of the judge's jurisdiction over a matter before him–cannot be said to have been taken in the absence of jurisdiction."[42]  Plaintiff was convicted and sentenced before Judge Pro.  When plaintiff failed to surrender to the BOP at the designated time, plaintiff had violated orders relating to his criminal case before Judge Pro.  Because of this, Judge Pro clearly had jurisdiction over plaintiff's case when he ordered plaintiff's arrest.  Therefore, because neither of the two

---

[39]*See* Fed. R. Crim. P. 4.

[40]*Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996).

[41]*Id.* (citing *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (citing Fed. R. Crim. P. 4; *Wong Sun v. United States*, 371 U.S. 471, 481 n.9 (1963))).

[42]*Mireles*, 502 U.S. at 13.

circumstances exist to overcome judicial immunity, Judge Pro is entitled to judicial immunity for his actions in ordering plaintiff's arrest.

In his response, plaintiff attempts to argue that under the FTCA, Judge Pro has waived immunity.[43]  Defendants correctly respond that while the FTCA waives the federal government's sovereign immunity when its employees are negligent within the scope of their employment, the FTCA waives the immunity of the United States rather than the immunity of individual employees.[44]  As already discussed above, plaintiff has not stated a claim under the FTCA. Plaintiff has not named the United States as a defendant nor has he alleged a jurisdictional basis for a claim under the FTCA.  Further, as previously explained, even if plaintiff had alleged a claim against Judge Pro under the FTCA, his claim would be barred by the statute of limitations.

## C.    Prosecutorial Immunity

Notwithstanding the expiration of the limitations period, plaintiff's claims would also fail because Assistant United States Attorney Damm is also immune from suit.  The Supreme Court has recognized a rule of absolute immunity when a prosecutor's activities are "intimately associated with the judicial phase of the criminal process," or when the actions are incidental to or give legal effect to the judicial proceeding.[45]  Ultimately it is the function being performed

---

[43]Plaintiff also makes this argument with respect to Assistant United States Attorney Damm's prosecutorial immunity.  For the same reasons stated above regarding Judge Pro, plaintiff's argument fails with respect to Assistant United States Attorney Damm as well.

[44]*See* 28 U.S.C. 1346(b)(1); *see also Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n.4 (10th Cir. 2001) ("The United States is the only proper defendant in an FTCA action."); *Rogers v. Fed. Bureau of Prisons*, 105 Fed. Appx. 980, 984 (10th Cir. 2004).

[45]*McCormick v. City of Lawrence, Kan.*, 253 F. Supp. 2d 1172, 1204 (D. Kan. 2003) (quoting *Imbler v. Pachtman*, 424 U.S. 409 (1976)).

which determines if the prosecutor is protected by absolute immunity.[46]  A prosecutor acting as an advocate for the state is afforded absolute immunity, whereas a prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.[47] Thus, a prosecutor is absolutely immune from suit for the decision to prosecute;[48] any related investigatory or evidence gathering actions;[49] evaluation of the evidence and determination of whether there is probable cause; the determination of what information to present to the court and the drafting of affidavits, or other documents associated with the court's determination of probable cause.[50]

In advising Dilberti that he would file the necessary complaints with Judge Pro to procure an arrest warrant, Damm was acting within the scope of his duties as a prosecutor and advocate for the government.  His conduct was clearly incidental to the legal proceedings in that he was making a determination of probable cause and of what information to present to the court regarding this issue.[51]  Accordingly, his actions were prosecutorial and protected by absolute immunity.  The Supreme Court has held that activities by prosecutors entitled only to qualified

---

[46]*Id.*

[47]*Id.* at 1205 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

[48]*Hammond v. Bales*, 843 F.2d 1320, 1321 (10th Cir. 1988).

[49]*Imbler*, 424 U.S. at 431 n.33; *Scott v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000) (finding prosecutor immune from investigatory conduct or from failure to conduct an adequate or independent investigation).

[50]*Kalina v. Fletcher*, 522 U.S. 118, 130 (1997).

[51]*See Van Deelen v. City of Eudora, Kan.*, 53 F. Supp. 2d 1223, 1229 (D. Kan. 1999) (prosecutor had absolute immunity for his actions in reviewing and evaluating the evidence found in the police offense reports and witness statements, in determining that the evidence was sufficient to support a finding of probable cause, and in deciding to file charges).

immunity include: (1) giving legal advice to police; (2) holding a press conference; (3) fabricating evidence during the preliminary investigation of an unsolved crime; and (4) personally attesting to the truthfulness of statements made in a certification.[52]  Damm's explanatory comments, however, do not fall within any of the aforementioned categories.[53] Thus, Damm is entitled to absolute prosecutorial immunity for his actions.

To the extent plaintiff's Complaint could be construed as alleging that Damm gave legal advice to police when he advised Diliberti that he could arrest plaintiff based on the Judgment and Commitment order, Damm's actions do not strip him of absolute prosecutorial immunity. The Supreme Court does not believe that "advising the police in the investigative phase of a criminal case is so 'intimately associated with the judicial phase of the criminal process' that it qualifies for absolute immunity."[54]  "'However, the Court nowhere suggested that it intended to cut back on *Imbler*'s protection of conduct directly related to the decision to prosecute a case.'"[55] Rather, the Supreme Court in *Burns* recognized that "the inquiry would turn on 'whether the prosecutor's actions are closely associated with the judicial process.'"[56]  "Thus, the question is not simply a matter of whether the prosecutor communicated advice to the police but rather was

---

[52]*McCormick*, 253 F. Supp. 2d at 1205 (citations omitted).

[53]Plaintiff does not allege and there is no evidence before the Court that defendant Damm personally attested to the truthfulness of statements made in his filing for an arrest warrant with the United States District Court in Nevada.  Rather, the government states that Diliberti was the affiant on the Complaint.  (Doc. 29 at 4–5.)  Thus, Defendant Damm's request for a warrant is not an action that falls within the category protected by qualified immunity.

[54]*Burns v. Reed*, 500 U.S. 478, 493 (1991) (quoting *Imbler*, 424 U.S. at 430).

[55]*VanDeelen*, 53 F. Supp. 2d at 1231 (quoting *Springmen v. Williams*, 122 F.3d 211, 213 (4th Cir. 1997)).

[56]*Id.* (quoting *Burns*, 500 U.S. at 495).

the advice closely associated to the attorney's decision to prosecute."[57]

In this case, Damm was not advising Dilberti during the investigative stage of a criminal case and the advice was not closely associated to Damm's decision to prosecute.  There was no question that plaintiff had clearly violated the law when he failed to self surrender.  At this point, plaintiff was subject to arrest; his name had even been entered into the National Crime Information Center as a wanted felon.  Therefore, Damm's statement to Dilberti that the defendant could be arrested based on the Judgment and Commitment Order was not legal advice as defined by *Burns*.[58]

### D.    Res Judicata

Res judicata has been defined as "a rule of fundamental and substantial justice that enforces the public policy that there be an end to litigation."[59]  "By preventing repetitious litigation, application of res judicata avoids unnecessary expense and vexation for parties, conserves judicial resources, and encourages reliance on judicial action."[60]  Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."[61]  "'Stated

---

[57]*Id.* (citations omitted).

[58]*See Springman*, 112 F.3d 212–214 (holding the prosecutor was entitled to absolute immunity for advising police officer that the facts gathered were sufficient to warrant filing the application for a Statement of Charges and Summons prepared by the officer); *see also VanDeelen*, 53 F. Supp. 2d at 1232 (finding that prosecutor's statement was "nothing more than his communication to the police chief that he has reviewed the police reports and concurs with their conclusions that there is sufficient evidence in those reports on which to prosecute" and finding that there was "no legal authority" for "characterizing [prosecutor's] particular statement here as legal advice within the parameters of *Burns*").

[59]*May v. Parker-Abbott Transfer and Storage, Inc.*, 899 F.2d 1007, 1009 (10th Cir. 1990) (citations omitted).

[60]*Id.* (citing *Montana v. United States*, 440 U.S. 147 (1979)).

[61]*Allen v. McCurry*, 449 U.S. 90, 94 (1980).

alternatively', under the doctrine of res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."[62]

### 1.    *Same Claims*

The Tenth Circuit applies the transactional approach of the Restatement (Second) of Judgments § 24 (1982) in order to determine what constitutes a single 'cause of action' in any given case.[63]  That Restatement section states:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as to whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.[64]

"Inasmuch as the doctrine of res judicata precludes parties from relitigating issues that were or could have been raised, parties cannot defeat its application by simply alleging new legal theories."[65]

In this case, the "transaction" was plaintiff's arrest on August 13, 2002.  Both the claims in Trapp I and the instant case are based on this single "transaction" in that the claims in each case stem from the alleged constitutional violations committed by defendants during the course of plaintiff's arrest.  The only difference between the two suits is plaintiff's additional naming of

---

[62]*Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1238 (10th Cir. 1992) (citations omitted).

[63]*Id.*

[64]Restatement (Second) of Judgments § 24 (1982).

[65]*Clark*, 953 F.2d at 1238 (citations omitted).

18

two defendants in the instant action and his assertion that he is advancing a different legal theory in this case, a claim under the FTCA.  Even though the Court has disregarded plaintiff's attempts to bring a claim under the FTCA, such a claim would also be precluded by res judicata which prevents parties from "'relitigating issues that were or could have been raised in the prior action.'"[66]  Therefore, because plaintiff has brought a successive action based on the same transaction in Trapp I, the first element of the res judicata is met here.

### 2.    Same Parties

All of the named defendants in this action, with the exception of Judge Pro and Assistant United States Attorney Damm, are the same parties that plaintiff named in Trapp I.  "Res judicata is applicable only to parties to the first suit or their privies."[67]  "'There is no definition of "privity" which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel.'"[68]  Instead, "'privity depends upon the circumstances.'"[69]  "Privity may . . . be established if the party to the first suit represented the interests of the party to the second suit."[70]

Here, defendants provide no support to conclude that Judge Pro and Assistant United States Attorney Damm are in privity with the remaining defendants.  However, as already explained, the two additional defendants named to this action are immune from suit.  But

---

[66]*Id.* at 1239 (citing *N. Natural Gas Co. v. Grounds*, 931 F.2d 678, 681 (10th Cir. 1991)).

[67]*Satsky v. Paramount Comm'ns Inc.*, 7 F.3d 1464, 1468 (10th Cir. 1993) (citing *Lowell Staats Mining Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1280 (10th Cir. 1989) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980))).

[68]*Id.* (quoting *Lowell Staats*, 878 F.2d at 1274–75).

[69]*Id.* (quoting 1B James Wm. Moore et al., Moore's Federal Practice ¶ 0.411 (1993)).

[70]*Id.* (citing *Lowell Staats*, 878 F.2d at 1280; Moore's Federal Practice ¶ 0.411).

because the other defendants were named defendants in Trapp I, the second element of the

doctrine of res judicata is satisfied with respect to Defendants Dilberti, Schuster, Beam, Webber,

the United States Marshals Service, and the unnamed defendants.

### 3.  *Final Judgment on the Merits*

While plaintiff's action in Trapp I is currently on appeal to the Tenth Circuit, "[t]he

pendency of the appeal does not alter the finality of the case for purposes of res judicata or

collateral estoppel."[71]  In this case, the Court's summary judgment in favor of defendants in

Trapp I is a final judgment on the merits that precludes plaintiff from relitigating the same cause

of action in this case.  Therefore, because with this action plaintiff is attempting to relitigate the

same claims raised in his prior action against the same defendants from Trapp I that resulted in a

final judgment on the merits, res judicata bars plaintiff's action against Defendants Dilberti,

Schuster, Beam, Webber, the United States Marshals Service, and the unnamed defendants.

## V.  Conclusion

The Court grants defendants' motion to dismiss for several reasons.  Plaintiff's claim is

barred by the expiration of the statute of limitations.  Alternatively, Defendants Judge Pro and

United States Assistant Attorney Damm, are immune from suit.  And, plaintiff's action against

Defendants Dilberti, Schuster, Beam, Webber, and the United States Marshals Service is barred

by res judicata.  For all of these reasons, plaintiff's action is dismissed.

---

[71]*Bui v. IBP, Inc.*, 205 F. Supp. 2d 1181, 1189 (D. Kan. 2002) (citing 18 Charles Alan Wright, et al., Federal Practice and Procedure, § 4433 (1981)) (noting established rule in federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal); *Brooks v. Graber*, No. 00-2262-DES, 2000 WL 1679420, at *4 (D. Kan. Nov. 06, 2000); *Meuli v. Farm Credit Serv. of Manhattan*, No. 91-1018-C, 1991 WL 177953, at *6 n.11 (D. Kan. Aug. 8, 1991) ("fact that an appeal is pending does not generally vitiate the res judicata effect of judgment"), *aff'd*, 982 F.2d 529, 1992 WL 372592 (10th Cir. Dec. 18, 1992) (unpublished table opinion)).

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to

Dismiss (Doc. 29) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 25th day of May 2006.

         S/ Julie A. Robinson
        Julie A. Robinson
        United States District Court

*Trapp v. Pro et al.*, No. 05-4104-JAR, Memorandum Order and Opinion Granting Defendants'
Motion to Dismiss